CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED for Charlottesville
JUN 29 2005
JOHN E. CORCORAN, CLERK
BY: Fay Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, A/S/O HUNTERS RIDGE CONDOMINIUM OWNER'S ASSOCIATION,<br><br>*Plaintiff,*<br><br>v.<br><br>JENNIFER FRITZ AND SARAH ELIZABETH KUHN NELSON,<br><br>*Defendants.* | CIVIL ACTION NO. 3:03-CV-00094<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter comes before the Court on motions for summary judgment by Defendants Sarah Elizabeth Kuhn Nelson ("Nelson") and Jennifer Fritz ("Fritz"), filed on March 11, 2005. A hearing was held in connection with these motions on March 23, 2005. On June 23, 2005, this Court entered a stipulated Order dismissing Clay Pendleton from this matter, leaving Fritz and Nelson as the only defendants. For the reasons that follow, Defendants' motions shall be granted.

I.

This case arises from a fire that occurred in the Hunter's Ridge apartment complex in Harrisonburg, Virginia. Nelson and Fritz were college roommates who entered into a lease agreement (the "Lease") to rent an apartment at Hunter's Ridge. The lease contained several

provisions relevant to the matters at issue in this case, including a "Destruction" provision, an "Insurance" provision, a "Repairs and Maintenance" provision, and a "Surrender" provision. The language of these provisions is discussed below. The lease did not contain a provision that expressly stated that tenants would be liable for fire damage to the apartment due to tenant negligence.

On Friday, May 10, 2002, Nelson left Harrisonburg with her then-fiancé for a trip to Ohio. Sometime the following day, Saturday, May 11, 2002, Clay Pendleton ("Pendleton") obtained permission from Jennifer Fritz to clean his civil war re-enactment materials in Fritz and Nelson's apartment. Nelson asserts that she was unaware that Pendleton would be using the apartment for that or any other purpose, though Fritz testified that Nelson "probably" knew of the planned activity "just from talking to her, from one roommate to another." There is no further evidence regarding Nelson's awareness of Pendleton's planned activity. Later on Saturday, Pendleton cleaned his various re-enactment materials at the apartment, including his Civil War musket. Pendleton undertook the cleaning of the Civil War musket on the balcony of the apartment. The cleaning process required using stripper to remove the varnish from the wood stock, sanding down the stock, applying linseed oil to the exposed bare wood, and then applying more linseed oil to the musket using a cotton rag. Pendleton used one rag remove the stripper from the stock and then used a separate rag to apply the linseed oil. By the time that he had finished cleaning the musket, it was approximately 8:00 P.M. He testified that he discarded the rag used to remove the stripper by "normal means," but that he left the linseed oil-soaked rag used to refinish the stock outside on the balcony. He also left an aerosol can of wood stripper and the can of linseed oil on the balcony.

2

Later that evening, Pendleton and Fritz left the Hunter's Ridge apartment complex to attend a party elsewhere in Harrisonburg. Fritz returned by herself to the apartment early the morning of May 12, 2002, at approximately 12:30 A.M. One hour later, Nelson and her fiancé also returned to the Hunter Ridge apartment from their trip to Ohio at approximately 1:30 A.M. Nelson went outside to the balcony of the apartment, smoked one cigarette, and then retired for the evening. Nelson testified that she put the cigarette out in an ashtray that was filled with water. The balcony was very dark at the time, and she did not see any rags on the balcony while smoking her cigarette. She did see a can on the balcony, but could not identify it due to the darkness. Nelson did not turn on the light on the balcony because it was not working at the time.

Hours after Nelson went to bed, she was awakened by a fire alarm alerting her that her building was on fire. She immediately dialed 911. The Harrisonburg Fire Department received notification of the fire at 4:06 A.M. Although the fire department put out the fire, the apartment building sustained extensive damage.

Subsequent to these events, Captain J. A. Miller of the Harrisonburg Fire Department conducted a fire investigation. He inspected the site and interviewed witnesses, including Fritz, Kuhn, Pendleton, and Nelson. Based on the investigation, he determined that the fire had originated on the balcony of Fritz and Nelson's apartment. Captain Miller further determined that the fire was caused by spontaneous combustion of a cotton rag used by Pendleton.

In light of Captain Miller's conclusions, Allstate Insurance Company, the insurer for Hunter's Ridge, has filed suit seeking subrogation for the costs of rebuilding the apartment building. Fritz and Nelson have each filed motions for summary judgment.

II.

Summary judgment should only be granted if, viewing the record as a whole in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Terry's Floor Fashions, Inc. v. Burlington Industries, Inc.*, 763 F.2d 604, 610 (4th Cir. 1985). In considering a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the non-moving party." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citations omitted). Where the movant has made out a *prima facie* case that would entitle it to summary judgment, the non-moving party bears a burden of presenting evidence showing that there is a genuine issue of material fact. The party must demonstrate specific facts, as opposed to general allegations, that present an issue worthy of trial. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 556–57 & n.3 (1992).

III.

Nelson contends that summary judgment is appropriate due to the implied co-insurance doctrine. In the alternative, she contends that Allstate has failed to produce sufficient evidence to support a finding of negligence against her, given her minimal relationship to the events causing the fire. Fritz contends that summary judgment is appropriate because the Lease only provides that the tenants should pay for the costs of repairs and maintenance, not rebuilding or replacing the unit.

4

Nelson first argues that Plaintiff's claim is barred by the so-called implied co-insurance doctrine, which provides that "if the lessor carries insurance on the building as provided for in the lease, there is a presumption that such insurance is for the benefit of both the lessor and the lessee." *Tate v. Trialco Scrap, Inc.*, 908 F.2d 974, 1990 U.S. App. Lexis 11999, *6 (6th Cir. 1990). Nelson claims that this principle now governs in Virginia because it was established in *Monterey Corp. v. Hart*, 216 Va. 843 (1976). The Court disagrees.

*Monterey* concerned a lease for a hotel apartment, which the tenant allegedly damaged by negligently causing a fire. Finding the circumstances were not covered by express contractual language, the Supreme Court of Virginia looked to the provisions of the lease as a whole to determine what the parties intended. It found that in the final analysis, intent could be determined based on a construction of the surrender provision, which required the lessee to deliver the premises in good condition, "reasonable wear and tear and damages by accidental fire excepted." *See Monterey*, 216 Va. at 844 & 847. Noting the general legal trend toward non-liability of the tenant where a fire occurs due to his negligence, the court concluded that this provision contemplated excepting liability for accidental fire caused by the lessee's negligence. *Id.* at 850. The court explained:

> It is unreasonable to conclude that the average layman contracting as a lessee of an apartment in a large multi-million dollar hotel would understand that a lease similar to the one signed by the [lessee] would exempt him only from loss by fire not caused by his own negligence . . . .
> It is our conclusion that the effect of the provisions of the lease was to absolve the tenant of any liabilty for damage to the building caused by a fire other than one attributable to the tenant's intentional and unlawful act.

Id. at 851.

5

This conclusion, while sympathetic to the lessee, did not go so far as to establish the implied co-insurance rule that is in effect in other jurisdictions. Rather, the court emphasized that it was looking to the *language of the lease itself*, taken in its context, to determine what the parties intended. For the court, a reading of this contract language alone—without any common law presumption of liability—demonstrated that the parties intended that the lessor assumed responsibility for all negligently caused fires. In light of this holding, *Monterey* does not require summary judgment here by imposing the implied co-insurance rule. Although many jurisdictions have adopted this doctrine, and there may be very good policy reasons to do so, it is not for this Court to lead the way in its establishment in Virginia. Rather, if Virginia common law is to be modified, it should be done through case law in the Virginia courts or by statute in the Virginia General Assembly.

This conclusion does not, however, settle the question of whether summary judgment is appropriate. Quite to the contrary, under *Monterey*, Defendants here are not liable if "the provisions of the lease as a whole" establish an intention that they would not be. *Monterey*, 216 Va. at 847. Indeed, other state courts have recognized specifically that "a mutual understanding that a tenant will be relieved of liability for his own negligence may be inferred from the provisions of the parties' lease." *See, e.g, Rizzuto v. Morris*, 22 Wash. App. 951, 958 n.2 (1979) (reviewing state cases which have inferred such meaning from suggestive provisions in the lease).

Here, a careful review of all of the provisions of the lease at issue, taken as a whole, indicates that the parties intended that tenants should not be liable for fires caused by their own negligence.

6

The lease directly and expressly contemplates the critical issues of destruction and insurance coverage, yet it conspicuously chooses not to state that tenants remain liable for destructive fires caused by their own negligence, despite several golden opportunities to do so. First, the lease explicitly discusses the topic of insurance. It provides as follows:

> **INSURANCE.** TENANT shall do nothing and permit nothing to be done on the premises that will interfere with any hazard insurance policy covering the same. MANAGEMENT does NOT insure TENANT's person or possessions and TENANT should carry such insurance as he deems necessary therefore (i.e., MANAGEMENT is not responsible for food loss due to refrigerator becoming non-functional, assuming MANAGEMENT effects repairs in a timely manner). TENANT agrees that MANAGEMENT shall not be liable for any damage to the person or property of TENANT, or any other person occupying or visiting the premises, sustained due to disrepair, misuse, or neglect of the premises on the part of TENANT.

This provision is a telling indication of the parties' intent. Despite the fact that the provision specifically contemplates the management carrying a hazard insurance policy for the building, it does not suggest that the tenant should carry a corresponding hazard insurance policy. In fact, while the provision encourages a tenant to carry insurance to protect his person and his property, it notably does *not* make the same recommendation regarding the coverage for the building. The conspicuous absence of such a provision is a tacit acknowledgment that the management, and not the renter, is assuming responsibility for accidental fires in the complex. In effect, the provision explains that the landowner will assume responsibility for the building, but that the tenant must assume responsibility for himself and his possessions. Contrary to Plaintiff's claims, this fact is not one "of no relevance to the issues at bar." To be sure, the mere fact that a lease does not require a lessor to carry fire insurance for rented property does not vitiate the general right of tort victim from seeking subrogation from the tortfeasor. The general right of

7

subrogation has long been recognized in Virginia. *See, e.g., McKay v. Citizens Rapid Transit Co.*, 190 Va. 851 (1950). Nevertheless, the absence of a property insurance requirement is significant evidence of the parties' intent. *See Monterey*, 16 Va. at 848 ("Where it is clear that the parties contemplate insurance to be paid for by the lessor it is logical to conclude that they intend the lessee to pay for the insurance through rent payment.") (quoting *Rock Springs Realty, Inc. v. Ward*, 392 S.W.2d 270, 278 (Mo. 1965) (citations omitted)). Here, it strongly suggests that the parties intended that landowner alone would assume responsibility for the building.

Further evidence of the parties' intent that a tenant should not be liable for his negligently caused fires is the "Destruction" provision in Section 13, which contains similarly suggestive language. The Section provides as follows:

> **DESTRUCTION.** If the premises are rendered totally unfit for occupancy by fire, act of God, or accident, the term of this Lease shall immediately cease upon payment of rent apportioned to the day of such occurrence. If, however, the premises are only partially destroyed or damaged and remain suitable for habitation and MANAGEMENT decides to repair the same, such repairs shall be made by MANAGEMENT without unreasonable delay, and the LEASE shall remain in full force and effect without any abatement of rent.

This provision expressly contemplates a scenario where the property is destroyed by "accident," a term that normally encompasses negligently-caused accidents. As discussed in *Monterey*, it is ordinary to refer to an automobile collision as an "accident," even though "[n]ormally, negligence on the part of one or both parties is involved." *Monterey*, 216 Va. at 850. Similarly, there is no qualification of the term "fire" to indicate that it does not include negligently-caused fire. During destruction due to accident or fire, the lease contemplates only that "repairs shall be made by MANAGEMENT" if feasible, or that the lease shall terminate immediately. Although it

8

would be a natural place to discuss the tenant's liability for fire or other accidents due to tenant negligence, this provision makes no mention of tenant's liability. Instead, it only focuses on the landowner's right to make repairs. Had the landowner intended for tenants to retain liability for negligently caused fire, it surely would have addressed this point in its discussion here.

In response to this evidence, Plaintiff argues that several provisions of the lease suggest a contrary conclusion. First, Plaintiff points to the maintenance provision of Section 7, which provides as follows:

> **MAINTENENCE AND REPAIRS**. TENANT shall be responsible for general upkeep of the premises, together with any furnishings and window coverings (if provided by OWNER), including but not limited to, waxing of floors, regular and routine vacuuming and cleaning of carpets and furniture, cleaning of kitchen appliances and bathroom fixtures, and any other work which contributes to the general good appearance, repair, and cleanliness of the premises.

In this context, the provision explains that the tenant is responsible for "(b) [a]ll costs for repairs and maintenance resulting from *recklessness or negligent actions or omissions of TENANT or TENANT's guests or pets*." (Emphasis added). Plaintiff argues that this language is not limited to exclude negligence causing fires, and thus should apply here to Defendants.

When taken in its context, however, this provision clearly does not address issue of destruction of the property due to negligently caused fire. Rather, the provision is inescapably aimed at the normal, day-to-day maintenance that is necessary to keep the apartment functional, good-looking, and clean. It is titled "Maintenance and Repairs," and it refers to the prosaic tasks of "waxing of floors, regular and routine vacuuming and cleaning of carpets and furniture, . . . and any other work which contributes to the general *good appearance, repair*, and *cleanliness* of the premises." (Emphasis added.) This limited maintenance language is entirely

9

silent upon more serious matters such as destruction of the premises by a fire, evidently leaving them to be handled by the more specific "Destruction" provision discussed above. For this reason, the maintenance provision is not useful evidence for Plaintiff.

Second, Plaintiff points to the Surrender provision of Section 11, which provides that tenants will "surrender the premises in as good condition as they were at the commencement of this Lease, reasonable wear and tear excepted (wear and tear does not include necessary replacement of light bulbs, heat pump filter, or smoke detector batteries)." Here again, however, this language must be taken in context, and here again the lease as a whole suggests that its meaning should be limited. Like the provision concerning "Repairs and Maintenance," this language is focused on the very narrow issue of day-to-day maintenance. It speaks only of keeping the premises in "good condition," and even then it focuses upon trivial details, quibbling, for example, over whether the "reasonable wear and tear" exception protects against the replacement of light bulbs. If the parties had truly intended this provision to describe liability on tenants for negligently caused fires, the focus of the language would not have been so modest. For this reason, this provision also is not applicable to the larger issue of the liability of tenants for their negligently caused fires.

In this sense, the broad context of the express provisions of the lease, coupled with the conspicuous absence of tenant liability language, strongly suggests that the parties intended that the tenant would not be liable for his negligently caused fires. This implication is even stronger when viewed in the larger context of the modern rental market. As the Supreme Court of Virginia has stated, courts ascertaining the intent of the parties look not only to the language employed and the subject matter, but also the surrounding circumstances. The court is "never

10

shut out from the same light which the parties enjoyed when the contract was executed." *Town of Ashland v. Newman*, 163 Va. 500, 507 (1934) (quoted with approval in *Monterey*, 216 Va. at 850–51). Here, it is common knowledge that renters rarely if ever carry liability insurance for the entire building from which they rent, and landowners rarely make an effort to induce them to do so. Implicit in these circumstances is a recognition that landlord is in a better position to insure against loss than his individual tenants. Fire insurance companies, recognizing this fact, do not commonly market secondary fire insurance policies for buildings to renters. In such surrounding circumstances, when a rental contract lacks any affirmative language regarding the nature of liability for hazard, and when the contract provisions contemplate that the landowner will provide fire insurance for the building, it is reasonable to infer that the parties intended that liability for such hazards would rest solely with the landowner. This conclusion does not depend upon recognition of an implied co-insurance doctrine; it rests merely on a fair reading of the contract and common sense.

For these reasons, under the contract at issue, Defendants are not liable for fires created by their negligence. Although this conclusion is dispositive and renders the issue of Defendants' negligence immaterial, it is also worth noting that even if Defendants were liable for fires created by their negligence, Plaintiff's case would not survive summary judgment. Here, there is simply not sufficient evidence from which a jury could find that either Fritz or Nelson acted negligently.[1] There is no evidence that Fritz was even aware of the work that Pendleton

---

[1] The lease provision imposing liability on Fritz and Nelson for "[a]ll costs for repairs or maintenance resulting from the recklessness or negligent actions or omissions of Tenant or Tenant's guests" is not applicable here because, as discussed above, it only applies to negligence relating to day-to-day minor maintenance and repairs. As such, the only possible liability sounds in common law tort, for the negligence of just Fritz or Nelson.

11

performed in cleaning, much less that it involved combustible materials. Further, there is no evidence that Fritz was aware of Pendleton's decision to leave some of his cleaning materials out on the balcony after use, much less that she knew or should have known that this decision created any undue risk of harm. It is impossible to conclude from the evidence, for example, that it is generally less dangerous to dispose immediately of a oil-soaked rag "by normal means" than to allow the rag to first aerate on a balcony before disposal. For her part, Nelson was on a trip to Ohio at the time that Pendleton cleaned his Civil War materials, and there is similarly no evidence that, even if she was aware of Pendleton's activities, she knew what they entailed. As with Fritz, it is also not clear that she knew or should have known that Pendleton's behavior created an undue risk. Finally, any suggestion that Nelson's cigarette might have been the ignition source for the fire is pure speculation, as the only evidence that *Plaintiff* has presented is that Nelson extinguished her cigarette in water and that the cause of fire was actually spontaneous combustion of a rag. For these reasons, Plaintiff has insufficient evidence to make out a case of negligence against either Fritz or Nelson.

For the foregoing reasons, Defendants are entitled to summary judgment. The contract does not make them liable for negligently caused fires, and even if it did, there is insufficient evidence to conclude that they negligently caused a fire.

An appropriate Order shall issue.

ENTERED: *[signature]*
U.S. District Judge

6-29-2005
Date

12